IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LORI ANN SAMPSON, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| vs. )Civil Action No. 1:06-cv-204-TFM | |
| )    [wo] | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
|    Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits (DIB) and supplemental security income under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.*, Lori Ann Sampson ("Sampson") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court AFFIRMS THE COMMISSIONER'S decision.

### I.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422

(11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Sampson, age 42 at the time of the hearing, has a high school education. Sampson's past work experience includes employment as a nurse's aide, cashier, stock clerk, sewing machine operator, and hand packer. She has not engaged in substantial gainful work activity since the alleged onset date of January 15, 2004. Her application for benefits under the Act cited the following conditions as grounds for her disability: narcolepsy, a back disorder, bilateral carpal tunnel

syndrome, high blood pressure, migraine headaches, lupus, arthritis, and a mood disorder. The ALJ determined that Sampson suffered from arthritis, narcolepsy, lupus, spinal problems, and an affective disorder. Although the ALJ concluded that each impairment was "severe" within the meaning of the Act, he found that they did not meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Appendix 1 to Subpart P. The ALJ found that Sampson's allegations of pain and functional limitations were not credible, and that she retained the residual functional capacity ("RFC") to perform a significant amount of work at the medium level of exertion. Sampson's RFC would permit her to perform her past relevant work as a sewing machine operator and hand packer. Accordingly, the ALJ concluded that Sampson is not disabled.[1]

### III. ISSUES

Sampson specifies three issues for this judicial review:[2]

1. The ALJ erred in discrediting the opinions of two physicians.

2. The ALJ erred in failing to credit and adequately consider the effect of her narcolepsy upon her ability to work.

3. The ALJ erred in failing to find that she suffered from "severe" carpal tunnel syndrome and in failing to attribute any limitations to her manipulative functioning.

---

[1] R. 22-23. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[2] *See* Plaintiff's Brief in Support of Complaint ("*Pl.'s Br.*") at 1 (Doc. 16, filed August 29, 2006) *and* Order filed March 7, 2006 (Doc. 4)(directing Plaintiff to a brief in support of her claim(s) and to include in her brief a section titled "Statement of the Issues" which "shall state in a concise, and specific manner each issue which the plaintiff presents to the court for resolution").

## IV. DISCUSSION[3]

### A. The ALJ Did Not Err By Failing To Give The Treating Physician's Opinions A Controlling Weight In His Findings

Sampson contends that the ALJ erred by not assigning controlling weight to the opinions of her treating physician, Dr. R. Meadows, and the physician who evaluated her at the request of the State agency, Dr. Richard L. Bendinger, Jr.[4] She asserts that this error was compounded by the ALJ's crediting the lay opinion of the disability claims analyst who reviewed her record. Due to the inconsistencies between the physicians' opinions as to Sampson's disability and the objective medical findings in the record, the court finds that the record fully supports the ALJ's decision regarding the reliability of the physicians' opinions, and consequently, Sampson's residual functional capacity.

The record showed that Sampson was examined at the request of the State agency in April 2004. The examination was conducted by Dr. Bendinger of the Family Practice of Abbeville, where Sampson had been treated previously. Dr. Bendinger's report noted Sampson's claims that she had difficulty sleeping, sitting, standing, or walking because of chronic pain. His actual examination found that Sampson had normal blood pressure with no apparent gastrointestinal or nutritional problems. Dr. Bendinger did find tenderness in Sampson's paravertebral muscles, and pain with

---

[3]This Opinion combines Plaintiff's Issues 2 and 3 for discussion purposes.

[4]R. at 7.

range of motion, but that the remaining range of motion of the spine was normal.[5] He observed that Sampson's stance and gait were normal, that she could walk on her heels and toes, that she had no acute or chronic neurological deficits, and that she treated her chronic headaches with over-the-counter medications. Sampson was able to make a fist, registered a grip strength of 4/5, and displayed good dexterity.[6] Dr. Bendinger reported by history that Sampson had been diagnosed with lupus, rheumatoid arthritis, undifferentiated connective connective tissue disease, hypertension, depression, narcolepsy, gastroesophageal reflux disease, and chronic pain. He concluded that Sampson's multiple medical problems had negatively affected her ability to perform gainful employment, and that he did not think that she could perform full time factory work.[7]

In June, 2005, Sampson was the subject of a residual physical functional capacity assessment by Dr. Meadows, also of the Family Practice of Abbeville. Dr. Meadows found that Sampson could lift and/or carry up to five pounds frequently and ten pounds occasionally, stand and/or walk about one hour in an 8-hour workday, and sit about 6 hours in an 8-hour workday. He noted that Sampson should avoid activities that required more than occasional climbing, balancing, stooping, kneeling, and crouching; and should avoid crawling altogether. Although Dr. Meadows did not find any additional postural, manipulative, or visual limitations, he found that Sampson would have moderately severe functional limitations when performing simple tasks, relating to others,

---

[5]R. at 14.

[6]Plaintiff's Brief reports that her grip strength was 3/5. *Pl. Br.* at 4. However, reference to the Dr. Bendinger's report shows that he reported an actual grip strength of 4/5. R. at 435-36.

[7]R. at 15.

responding appropriately to supervisors, and making independent judgment.[8]

Finally, the record before the ALJ contained evidence of Sampson's history of medical treatment and daily activities. Before evaluating evidence from Sampson herself, the ALJ stated that a strong indicator of a claimant's credibility is the consistency between her statements and other information in the record.[9] He found that her assertions of debilitating pain were not consistent with the inconsistent and intermittent treatment reflected in the record. The ALJ contrasted Dr. Bendinger's findings - normal gait and stance, ability to walk on heels and toes, with no acute or chronic neurological deficits - with Sampson's wide range of activities. These included driving her mother and herself; conducting personal errands, written correspondence, business matters, mental computation of arithmetic; completing household chores, shopping, and cooking; and playing hand-held computer games. Sampson also attends social outings, cookouts, church, and goes out to eat.[10] The comparison led the ALJ to find that Sampson's wide variety of daily activities and the medical record which displayed factors such as intermittent care, non-compliance with the recommendations of her treating and examining physicians, positive reports from her treating physician, and use of over the counter pain medications could not be reconciled with her assertions of debilitating pain.[11]

Sampson's objections to the ALJ's RFC determination focus upon the rejection of opinions by Dr. Meadows and Dr. Bendinger. The Eleventh Circuit ruled in *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004) that a treating physician's opinion "must be given substantial or considerable

---

[8] R. at 15.

[9] R. at 19.

[10] R. at 19.

[11] R. at 19-20.

weight unless 'good cause' is shown to the contrary.'" *Phillips, id.* at 1240-41. "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.,* citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Social security regulations require an ALJ evaluating medical opinion evidence to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6). When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam). Contrary to Sampson's assertions, the Commissioner is not bound by the findings of a physician who conducted an examination at the behest of a State agency. <u>See</u> *Buck v. Barnhart*, 238 F.Supp.2d 1255, 1270-71 (D. Kan. 2002).[12]

In this case, the record shows that the ALJ considered Dr. Meadows' RFC findings which indicated that Sampson could lift and/or carry up to five pounds frequently and ten pounds occasionally, and could stand and/or walk for about one hour. He also noted the finding that Sampson had "moderately severe" mental functional limitations in several areas, but nonetheless incorporated "a wide variety of daily activities" into a productive lifestyle.[13] The ALJ also considered that, though Dr. Bendinger found that Sampson had multiple medical problems, all of his objective

---

[12]The ruling in *Buck* is grounded in the text of SSR 96-6p. That ruling provides: Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.

[13]R. at 20.

findings were within normal limits. The ALJ contrasted the RFC report by Dr. Meadows and objective medical information with Sampson's activities to conclude that the physicians' opinions were not supported by the record and did not merit controlling weight in his deliberations on the issue of Sampson's ability to work.[14] *Phillips, id.* Further, after explaining his reasons for discounting the opinions, the ALJ specifically stated that Dr. Meadows' conclusion that Sampson was disabled was not legally conclusive, and that such a determination was left to the Commissioner.[15] *See Lewis*, 125 F.3d at 1440.

Thus, the court finds that the ALJ did not err in discrediting the reports of two physicians regarding Sampson's ability to work, and substantial evidence in the record supports his decision.

**B.     The ALJ Did Nor Err In His Consideration Of Sampson's Narcolepsy And She Did Not Establish That She Was Impaired By Severe Carpal Tunnel Syndrome.**

Sampson argues that the ALJ did not properly credit and consider her narcolepsy diagnosis, and the impact that her documented illness had on her ability to function.[16] She also argues that the ALJ erred when he did not find that she was impaired by "severe" carpal tunnel syndrome.[17] Each issue turns upon the diagnosis and treatment she received for each condition. The court finds that the ALJ did not err in either regard.

Sampson was diagnosed with narcolepsy in January, 2003 by Dr. Ann McDowell. Dr.

---

[14] R. at 20.

[15] R. at 20.

[16] *Pl. Br.* at 12.

[17] *Pl. Br.* at 14.

McDowell prescribed medication for the illness.[18] In June, 2005, Sampson was examined by a neurologist, Dr. Alan Prince. Dr. Prince determined that Sampson had narcolepsy and carpal tunnel syndrome.[19] The ALJ noted that Dr. Prince only prescribed medication for narcolepsy, and not carpal tunnel syndrome. It was further noted that Dr. Prince found Sampson's coordination and sensory test results to be within normal limits.[20]

### 1. *The ALJ Did Not Err In His Consideration Of Sampson's Diagnosed Narcolepsy.*

Sampson's narcolepsy argument contends that the ALJ did not consider the impact of fatigue and sleepiness upon her ability to work, and that this absence of explanation requires remand under *Vega v. Commissioner of Social Security*, 265 F.3d 1214 (11th Cir. 2001). After her initial diagnosis in January, 2003, she was referred to Dr. Prince upon her continued complaints of excessive sleepiness during the day and restlessness at night. Sampson reported to Dr. Prince that it took her an hour or two to fall asleep, that she woke up on an hourly basis, and that she was sleepy when she awoke around six in the morning.[21] The evidence of her sleeping disorder was addressed at Sampson's administrative hearing by Dr. Marshall Tessnear, Ph.D, who considered it part of her depressive disorder and anxiety disorder. Dr. Tessnear stated that Sampson's depression and anxiety did not meet or equal any of the criteria in the Listings of Impairment, and specified that she would encounter "fair to mild" functional limitations with activities of daily living, with "mild to moderate" functional limitations in social functioning and when maintaining concentration, persistence, and

---

[18] R. at 15.

[19] R. at 16.

[20] R. at 19, 522.

[21] R. at 521.

pace.[22]

These restrictions that the record supported were incorporated into the questions posed to the vocational expert at Sampson's administrative hearing.[23] Sampson's ability to return to her past relevant work as a sewing machine operator or hand packer was thus supported by the record, and the ALJ did not err.

### 2. *Sampson Did Not Establish That She Was Impaired By Severe Carpal Tunnel Syndrome.*

Sampson cites her first reports of hand and wrist pain in 2000, which was attributed to overuse at work.[24] Upon examination by Dr. Bendinger in April, 2004, however, Sampson was able to make a fist, registered a grip strength of 4/5, and displayed good dexterity.[25] Dr. Prince did not prescribe medication for carpal tunnel syndrome after diagnosing her in June, 2005.[26] Even Dr. Meadows, whose opinion Sampson says was wrongly discounted by the ALJ, reported that she could use her hands for repetitive grasping and fine manipulation.[27]

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled. 20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The record shows that Sampson had good use of the upper extremities, and regularly engaged in activities such as driving, meal preparation, and household chores. Perhaps most convincing is Sampson's

---

[22]R. at 16.

[23]R. at 561-62; 571-72.

[24]*Pl. Br.* at 14.

[25]R. at 15, 435-36.

[26]R. at 19.

[27]R. 527.

ability to play computer games, which, by definition, involves a great degree of dexterity in the hands and wrists. A finding of "severe" carpal tunnel syndrome simply cannot be reconciled with Sampson's documented activities. She has failed to establish that she has this condition to a "severe" degree, and therefore cannot establish disability based on that condition. Thus, Sampson failed to meet her burden of proof, and the ALJ cannot have erred by failing to find her disabled due to carpal tunnel syndrome.

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

Done this 30th day of January, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE